◼ In the Matter of ENVIRO-PROBE, INC., Petitioner, v NEW YORK CITY DEPARTMENT OF ENVIRONMENTAL PROTECTION et al., Respondents. [635 NYS2d 635] —Petition brought pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Richard Lowe, III, J.], entered June 23, 1994) unanimously granted, and the determination of respondent New York City Environmental Control Board, dated October 27, 1993, which found that petitioner was in violation of section 8175 (a) (1) of Asbestos Control Program Regulations of the Department of Environmental Protection of the City of New York (now 15 RCNY 1-83 [a] [i]) and imposed a fine of $1,500, unanimously annulled, without costs.

This proceeding arises from an asbestos abatement project which was performed in four rooms of the basement of 500 Eighth Avenue. The "asbestos inspection report" relative to the project was filed on June 19, 1991 by the abatement contractor, which is not a party herein, and indicated a project starting date of June 26, 1991 and an anticipated completion date of September 30, 1991. Petitioner, a corporation whose business includes third-party monitoring of asbestos abatement projects, was identified in the report as the project's monitor. Such monitoring, which is governed by 15 RCNY 1-71 through 1-85, includes procedures for sampling of the air in the area from which asbestos has been removed and analysis of that air for any remaining asbestos particles. However, before such sampling may be performed, the monitor must first conduct a "visual inspection confirm[ing] that all containerized waste has been removed from work and holding areas and there is no visible ACM [i.e., asbestos containing material] debris or residue on or about all abated surfaces." (15 RCNY 1-83 [a] [1].) This proceeding arises from a charge brought by the Department of Environmental Protection ("DEP") that petitioner failed to properly carry out this visual inspection.

At the hearing on the charges, DEP Inspector Brenda Gill testified that she inspected the premises in July of 1991, while the abatement was still in progress, and on September 3, 1991, by which time the abatement and third-party monitoring had been completed. At that time, she observed what appeared to

be asbestos residue on the floor and on a pipe in the boiler room. She took two samples from the floor, one from the pipe, and one from the electrical room. The first three tested positive for asbestos. A notice of violation was thereupon issued to petitioner, as the third-party monitor, on the theory that since asbestos residue was visible to the inspector, it could be concluded that petitioner "failed to confirm the absence of all visible ACM debris or residue on or about the abated surfaces via visual inspection before the commencement of final clearance air monitoring."

The assistant superintendent of the building in which the abatement was carried out also testified at the hearing. He stated that, on August 17, 1991, after the completion of the abatement and monitoring, he cleaned and painted the boiler room floor. He also noted that, although the basement was kept locked, dust could enter the basement through an air vent as well as via the elevator shaft. At some point in August, a second asbestos abatement project was taking place in the building on the second floor, in the air conditioning room.

Eugene Daniels, a technician employed by petitioner, testified that he personally performed a visual inspection of the basement area on July 11, 1991 and, when he found no asbestos, instructed the crew to continue with the "encapsulation" of the pipes which had formerly been covered with asbestos, which involved spraycoating them with a protective substance, and with the air monitoring, which was negative. Daniels identified the boiler room pipe from which the inspector took the third sample as a drain pipe, which had never been covered with asbestos.

After the hearing, the charge was sustained by the Administrative Law Judge ("ALJ"). Petitioner was unsuccessful in vacating this finding upon administrative review, and the within proceeding ensued.

Initially, we note that, although petitioner alludes to, without directly addressing, various factors from which we are apparently meant to conclude that there are flaws in the credibility of the inspector's statement that she found the subject samples in the basement (such as the fact that she was unaccompanied for most of her inspection), there is no valid basis on this record to find that the inspector fabricated her report, and the ALJ's finding that the three asbestos containing samples were indeed present in the area at the time of her inspection is clearly supported by substantial evidence.

Furthermore, we do not find, as petitioner urges, that the presence of visible asbestos in an area after petitioner was sup-

posed to have conducted an inspection for same can never, by itself, constitute substantial evidence adequate to support a finding that a violation was committed. In particular, we note that the fact that this evidence is purely circumstantial is not, in and of itself, a reason to find that it is inadequate to make out a prima facie case in support of the administrative finding.

However, in this case, we find that the Administrative Law Judge overlooked the evidence offered in response to the charges, and that consideration of that evidence so weakens the inference to be drawn from the single circumstantial fact that asbestos was present as to make it impossible to characterize the evidence as substantial. We note in this context that the ALJ accepted petitioner's evidence that the monitoring was concluded six weeks prior to the inspection and, in fact, the ALJ himself noted that this fact reduced significantly the probative weight that should be given to the fact that asbestos was present at the site. Moreover, significant additional evidence was offered by petitioner to refute the charges, i.e., the testimony of the assistant building superintendent that he painted the floor subsequent to the completion of the abatement and prior to the inspection, evidence that debris could enter the basement by means of an air vent, the elevator shaft and the doors, which were not airtight, evidence that a separate asbestos abatement project was ongoing on the second floor in the intervening period, and evidence that the pipe on which the third sample was found was a drain pipe which would not originally have been encased in asbestos. In light of this significant evidence that the asbestos which was found was either in places which had been painted in the interim or on a pipe which had not originally been encased with asbestos, and the evidence that there was a source within the building from which the asbestos could have arrived on-site subsequent to petitioner's monitoring activities, we find that the ALJ's finding that the presence of asbestos established that petitioner had not adequately performed its visual monitoring was not supported by substantial evidence. Concur—Rosenberger, J. P., Ellerin, Rubin, Asch and Nardelli, JJ.